STATE OF MAINE                    SUPERIOR COURT
PENOBSCOT, SS.                    CIVIL ACTION
                                 Docket Nos. AP-05-14, AP-05-15,
                                 AP-05-16, AP-05-17

                                 レ  リ  ᒣLㅐ- ᒣ  ᑕ ᑕᑲ


Darling's Bangor Ford,
        Plaintiff/Appellee                    ┌─────────────────────┐
                                              │  FILED & ENTERED    │
                                              │  SUPERIOR COURT     │
                                              │                     │
                                              │   MAY 3 0 2006      │
  v.                    Order on Appeal        │                     │
                                              │  PENOBSCOT COUNTY   │
                                              └─────────────────────┘

Ford Motor Company,
        Defendant/Appellant


        In appeals initiated by Ford Motor Company, Ford and Darling's Bangor Ford

each challenge separate aspects of a decision underlying judgments entered in four small

claims actions by the District Court (Bangor, Murray, R., J.).[1] The court has reviewed the

parties' submissions on these consolidated appeals. The contentions raised by the parties

at trial and now on appeal bear on the formula prescribed by the Legislature used to

determine the amount of reimbursement that a motor vehicle franchisee, such as

Darling's, is entitled to receive from a motor vehicle franchisor, such as Ford's, for parts

used by the franchisee as part of repair work required to satisfy the franchisor's warranty.

        In 10 M.R.S.A. § 1176, the Legislature has established the nature and extent of a

franchisor's obligation toward a franchisee, when the franchisee conducts repairs of the

---

[1] The four judgments were entered in favor of Darling's. The *cumulative* amount of those
four judgments was $17.46. Darling's essential argument on this appeal is that the trial
court used an incorrect measure to determine the amount of reimbursement owed by
Ford. It contends that the *cumulative* amount of the four judgments should be $244.42.
        It bears note that Darling's claims for attorneys fees may remain outstanding: the
court files do not reflect any award of that claim by the District Court, although the court
provided for such an award in its judgment. Even if this claim remains pending, the
judgments are deemed to be final. *Cf.* M.R.Civ.P. 54(b)(2); M.R.Sm.Cl.P. 15 (when
Maine Rules of Small Claims Procedure do not prescribe a particular procedure in a small
claims action, guidance may be found in analogous provisions of the Maine Rules of
Civil Procedure).

1

franchisor's vehicle pursuant to a warranty and when those repairs include parts. In pertinent part, section 1176 provides:

> If a motor vehicle franchisor requires or permits a motor vehicle franchisee to . . . provide parts in satisfaction of a warranty created by the franchisor, the franchisor shall properly and promptly fulfill its warranty obligations, . . . and
> . . .shall reimburse the franchisee for any parts so provided at the retail rate customarily charged by that franchisee for the same parts when not provided in satisfaction of a warranty. A franchisor may not otherwise recover its costs for reimbursing a franchisee for parts and labor pursuant to this section. For purposes of this section, the retail rate customarily charged by the franchisee for parts may be established by submitting to the franchisor 100 sequential nonwarranty customer-paid service repair orders or 60 days of nonwarranty customer-paid service repair orders, whichever is less in terms of total cost, covering repairs made no more than 180 days before the submission and declaring the average percentage markup. The average percentage markup so declared is the retail rate, which goes into effect 30 days following the declaration, subject to audit of the submitted repair orders by the franchisor and adjustment of the average percentage markup based on that audit. Only retail sales not involving warranty repairs, not involving state inspection, not involving routine maintenance such as changing the oil and oil filter and not involving accessories may be considered in calculating the average percentage markup. A franchisor may not require a franchisee to establish the average percentage markup by an unduly burdensome or time-consuming method or by requiring information that is unduly burdensome or time-consuming to provide, including, but not limited to, part-by-part or transaction-by-transaction calculations. A franchisee may not change the average percentage markup more than 2 times in one calendar year.

The legislative history to section 1176 reveals that the essence of first sentence quoted above has been a part of the statute since 1991. The remainder of the statute quoted above was the product of an amendment enacted in 2003. *See* P.L. 2003, c. 356, § 10.

In this appeal, Ford places in issue the nature of the submission of the "100 sequential nonwarranty customer-paid service repair orders," which are used to establish the retail rate that a franchisee (Darling's) customarily charges its customers for non-warranty repairs. That retail rate is then used as a basis to determine the amount that the franchisor (Ford) will be required to reimburse its franchisee for parts used in repairs that are subject to a warranty issued by the former. As it did (unsuccessfully) before the trial court, Ford argues on this appeal that section 1176 should be read, first, to require the franchisee to include, in addition to the 100 repair orders described by that statute, all non-retail repair orders that fall within the sequence of the statutorily prescribed retail

repair orders; and, second, to exclude from the 100 repair orders, those that are generated by work that, under section 1176, is not considered when the average retail rate for purposes of franchisee reimbursement is established.

These contentions require resort to familiar principles of statutory construction. As the Law Court has articulated such principles of relevance here, "[w]hen interpreting a statute, our objective is to give effect to the Legislature's intent. To determine that intent, we first look to the statute's plain meaning. If there is no ambiguity, we do not examine legislative history. If ambiguity exists, we look beyond the statutory language to its legislative history. We also consider the whole statutory scheme of which the section at issue forms a part, so that a harmonious result, presumably the intent of the Legislature, may be achieved." *Ashe v. Enterprise Rent-A-Car*, 2003 ME 147, ¶ 7, 838 A.2d 1157, 1159 (citations omitted). Further, this court, functioning in an appellate capacity, examines the meaning of the statute de novo. *Id.*, ¶ 7, 838 A.2d at 1157.

The court concludes that the plain language of the relevant portions of section 1176 forecloses the construction urged by Ford. First, the statute does not require a franchisee to submit any repair orders other than "nonwarranty customer-paid service repair orders." Rather, with specificity, the statute identifies the records that a franchisee may submit to establish the retail rate, and those records do not include the additional ones that Ford wants Darling's to produce, namely, the repair orders that fall in between those that are described by statute.

Ford argues that section 1176 does not prohibit a demand for those additional repair orders and that without them, it cannot determine whether the non-warranty customer-paid service repair orders provided by the franchisee pursuant to the statute are sequential (that is, whether they constitute 100 sequential repair orders that satisfy the statutory criteria, as opposed to repair orders, for example, selected by the franchisor with an eye toward enhancing the retail rate). However, section 1176 forbids a franchisor from requiring a franchisee to engage in an unduly burdensome process of providing records relevant to the process of determining the retail rate. The trial record included evidence that the additional records demanded by Ford (namely, the non-retail repair orders) nearly tripled the number of repair orders required by statute. In ruling that Ford was not entitled to demand production of the extraneous material from Darling's, the

court was entitled to conclude that Darling's would be exposed to an undue burden. The court therefore was warranted in holding that Ford's demand exceeded its right under section 1176.

Ford also contends that the 100 non-warranty repair orders required by section 1176 should not include records for warranty repairs, state inspection, routine maintenance such as changing the oil and oil filter and accessories, because those repairs are not considered when the average retail rate itself is calculated. The first of these proposed exclusions is addressed in the affirmative statutory description of the records that the franchisee may submit to the franchisor, namely, "100 sequential *nonwarranty* customer-paid service repair orders" (emphasis added). The remaining question is whether records for state inspection, routine maintenance such as changing the oil and oil filter and accessories count toward the 100 repair orders that the franchisee may produce for the franchisor.

Again, the plain language of the statute undermines Ford's argument. Section 1176 plainly provides that these types of repairs and work are not to be considered when the retail rate for parts is calculated. That, however, is a different process than the identification of which repair orders a franchisee may submit to the franchisor. The statute reveals that the former is a subset of the latter. It is clear that the Legislature has characterized state inspections, routine maintenance such as changing the oil and oil filter and accessories as forms of work that involve parts, because the statute refers to this work in the context of identifying which types of repairs can be included in the retail rate computation. In light of this, if the Legislature had intended to exclude repair orders generated by these repairs from the set of 100 repair orders that the franchisee can submit to the franchisor, it would have included such exclusionary language when it described the character of the repair orders that make up the set of 100. The Legislature, however, chose not to do so. The court thus declines to graft on to one descriptive passage the Legislature's own limiting language that it used in a different context within the very same statute.

Ford argues that this construction means that the 100 repair orders may end up including many such records that cannot be used to determine the retail rate for parts and that the basis for that calculation may be too limited to allow a proper result. That,

4

however, is a legislative judgment, and the plain language of section 1176 indicates that the Legislature did not intend to equate the 100 submitted repair orders with the universe of records ultimately used directly to calculate the retail rates for parts.

For these reasons, the trial court did not err when it concluded that Darling's initial submission of repair orders complied with the provisions of section 1176 and that Ford improperly rejected them.

The next question, which is the subject of Darling's challenge to the judgments entered by the District Court, concerns the manner prescribed by section 1176 to calculate the retail rate customarily charged for parts in non-warranty repairs, which becomes the retail rate that a franchisor becomes required to pay to the franchisee. Pursuant to the approach outlined above, from the 100 qualifying repair orders produced by the franchisee, the charges for parts are isolated, and the dealer cost and the amount charged to non-warranty customers for those parts can be identified. The parties then diverge in their contentions about how those numbers should be treated to arrive at the "average percentage markup," which is the statutory standard. Invoking a construction endorsed here by Ford, the trial court concluded that the average dollar value markup for those parts should be established (in other words, calculating the cumulative difference between the dealer cost and the retail sales price for all such parts, divided by the number of parts). When that figure is divided (and then multiplied by 100) by the average dealer cost for those same parts, the "average percentage markup" is established – when the "percentage" is that of the "average. . .markup."

As the trial court observed, however, the single statutory sentence at issue here also accommodates Darling's construction, which first identifies the percentage by which Darling's marks up a part from the dealer cost and then calls for an average of those percentages among the parts included in the 100 repair orders. This approach gives equal weight to the percentage markup for each part included in the 100 qualifying repair orders. In the competing analysis adopted below, on the other hand, the markup for more expensive parts receives weight than those for less expensive parts, for the simple reason that the greater costs for more expensive parts dominate the sum of the costs for all parts. (This accounts for the record evidence that under the formula urged by Ford, the average percentage markup for parts is roughly 20% lower than Darling's suggests.)

5

As the trial court pointed out, however, the ultimate standard for the amount of reimbursement due to the franchisee is the "retail rate customarily charged" for non-warranty work. This criterion predated the more specific formulaic language adopted in 2003, and it remains part of the statute. The 2003 amendment eliminated the requirement that the customary non-warranty retail rate must be calculated for each separate part used in warranty repairs. Instead, an "average percentage markup" is to be used. The reality is that different markup rates are associated with various parts. A further reality is that some parts are more expensive than others. A weighted analysis, which the District Court invoked, accounts for those differences better than one that does not, and it therefore provides a better overall picture of the franchisee's pricing system for parts. A franchisee's price structure is simply better reflected in an analysis where the magnitude of its price markups is tied to the relative value of the part itself. This dampens the disproportionate impact, for example, that would be created by relatively large markups on low-priced parts. Further, despite Darling's assertion to the contrary, such an analysis also remains faithful to the statutory language itself because it honors both analytical components of an average and of a percentage.

For these reasons, the court concludes that the District Court correctly construed the relevant provisions of section 1176 and correctly applied that statute to the claims for reimbursement submitted by Darling's to Ford.

The entry shall be:

The judgments of the District Court are affirmed.

Dated: May 25, 2006

_____
Justice, Maine Superior Court

6

Date Filed ___5/25/05___ ___Penobscot___ Docket No. ___AP-2005-14___

County

Action ___District Court Small Claims Appeal___
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

DARLING'S BANGOR FORD          vs.    FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY<br>169 PARK ROW<br>P O BOX 9<br>BRUNSWICK ME 04011-009<br>BY: JUDY METCALF, ESQ. | VERRILL & DANA<br>ONE PORTLAND SQUARE<br>P O BOX 586<br>PORTLAND ME 04112-0586<br>BY: DANIEL L. ROSENTHAL, ESQ. |

| Date of Entry | |
|---|---|
| 5/25/05 | Appeal from District Court, District Three, Division of Southern Penobscot Bangor, ME (Small Claims Docket No. SC-2004-117) The following papers were received and filed:<br><br>1. Statement of Claims (Small Claims)<br>2. Notice of Small Claims Hearing set 6/18/04.<br>3. Notice of Small Claims Hearing set for 10/29/04<br>4. Notice of Small Claims Hearing set for 1/21/05<br>5. Decision and Judgment 3/29/05 (Murray, R. J.)<br>6. Transcript Order<br>7. Defendant's Notice of Appeal<br>8. Plaintiff's Notice of Appeal<br>9. District Court Docket Entries-Certified Copy<br>10. Ten (10) Pieces of Correspondence<br>11. Brief of Defendant Ford Motor Company received in the District Court on 2/25/05<br>12. Plaintiff's Closing Arguments received in the District Court on 2/25/0 |
| 6/1/05 | Notice of Assigned Justice filed. Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Jeffrey L. Hjelm. /s/Margaret Gardner, Clerk Copy forwarded to attorneys of record. |
| 6/8/05 | Original Transcirpt of Small Claims Hearing held on 1/21/05 before Honorable Robert E. Murray, Judge of the District Court filed. (See file CV-2005-11 for transcript) |
| 6/9/05 | Notice and Briefing Schedule 76G Appeal of District Court Civil Action filed. Copy forwarded to attorneys of record. |
| 6/14/05 | Corrected (To Reflect Assigned Justice) Notice and Briefing Schedule 76G Appe of District Court Civil Action filed. Copy forwarded to attorneys of recor |

Date Filed __5/25/05__ ____Penobscot____ Docket No. __AP-2005-15__
                           County

Action __District Court Small Claims Appeal__
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**


DARLING'S BANGOR FORD                vs.    FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY<br>169 PARK ROW<br>P O BOX 9<br>BRUNSWICK ME  04011-009<br>BY:  JUDY METCALF, ESQ. | VERRILL & DANA<br>ONE PORTLAND SQUARE<br>P O BOX 586<br>PORTLAND ME  04112-0586<br>BY:  DANIEL L. ROSENTHAL, ESQ. |

| Date of Entry | |
|---|---|
| 5/25/05 | Appeal from District Court, District Three, Division of Southern Peobscot, Bangor ME  (Small Claims Docket No. SC-2004-118)  The following papers were received and filed:<br><br>1.  Statement of Claim (Small Claims)<br>2.  Notice of Small Claims Hearing set 6/18/05<br>3.  Notice of Small Claims Hearing set 10/29/04<br>4.  Notice of Small Claims Hearing set 1/21/05<br>5.  Decision and Judgment 3/29/05 (Murray, R., J.)<br>6.  Transcript Order<br>7.  Defendant's Notice of Appeal<br>8.  Copy of Defendant's Notice of Appeal (with note re: Original filing)<br>9.  Plaintiff's Notice of Appeal<br>10. District Court Docket Entries—Certified copy<br>11. Five (5) Correspondence<br>12. Plaintiff's Closing Argument received in the District Court on 2/25/05 |
| 6/1/05 | Notice of Assigned Justice filed.  Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Jeffrey L. Hjelm.  /s/ Margaret Gardner, Clerk  Copy forwarded to attorneys of record. |
| 6/8/05 | Original Transcirpt of Small Claims Hearing held on 1/21/05 before Honorable Robert E. Murray, Judge of the District Court filed.  (See file CV-2005-11 for Transcript) |
| 6/9/05 | Notice and Briefing Schedule 76G Appeal of District Court Civil Action filed.  Copy forwarded to attorneys of record. |
| 6/14/05 | Corrected (To Reflect Assigned Justice) Notice and Briefing Schedule 76G Appeal of District Court Civil Action filed.  Copy forwarded to attorneys of recor |

Date Filed ___5/25/05___ ___Penobscot___ Docket No. ___AP-2005-16___
County

Action ___District Court Small Claims Appeal___
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

DARLING'S BANGOR FORD vs. FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY | VERRILL & DANA |
| P O BOX 9 | P O BOX 586 |
| 167 PARK ROW | ONE PORTLAND SQUARE |
| BRUNSWICK ME  04011-0009 | PORTLAND ME  04112-0586 |
| BY JUDY METCALF, ESQ. | BY: DANIEL L. ROSENTHAL, ESQ. |

| Date of Entry | |
|---|---|
| 5/25/05 | Appeal from District Court, District Three, Division of Southern Penobscot, Bangor, ME  (Small Claims Docket No. SC-2004-202)  The following papers were received and filed:<br><br>1. Statement of Claim (Small Claims)<br>2. Notice of Small Claims Hearing set 8/6/04.<br>3. Defendant's Motion to Stay and for Sanctions<br>4. Plaintiff's Opposition to Defendant's Motion to Stay and for Sanctions<br>5. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to St and for Sanctions<br>6. Plaintiff's Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Stay and for Sanctions With Affidavit of John Darling<br>7. Order Re: Continuance until 9/10/04 and Stay (Russell, J.)  6/1/04<br>8. Order of Continuance (Gunther, J.)  7/16/04<br>9. Notice of Small Claims Hearing set 11/19/04<br>10. Notice of Appearance by Judy Metcalf, Esq. for Plaintiff<br>11. Letter from Plaintiff re: hearing dates<br>12. Letter from Defendant re: hearing dates<br>13. Letter from Judge Gunther dated 8/4/04<br>14. Notice of Small Claims Hearing set for 1/21/05<br>15. Decision and Judgment (Murray, R., J.) 3/29/05<br>16. Transcript Order<br>17. Notice of Appeal by Defendant<br>18. Notice of Appeal by Defendant (with note re: original filing)<br>19. Notice of Appeal by Plaintiff<br>20. Notice of Appeal by Plaintiff (with note re: original filing)<br>21. Plaintiff's Closing Argument Received in the District Court on 2/25/05<br>22. Certified Copy of District Court Docket Entries.<br>23. Six  (6) Pieces of Correspondence |
| 6/1/05 | Notice of Assigned Justice filed.  Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Jeffrey L. Hjelm.  /s/ Margaret Gardner, Clerk  Copy forwarded to attorneys of record. |

Date Filed __5/25/05__  __Penobscot__ Docket No. __AP-2005-17__
County

Action __District Court Small Claims Appeal__
**ASSIGNED TO JUSTICE JEFFREY L. HJELM**

DARLING'S BANGOR FORD   VS.   FORD MOTOR COMPANY

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| EATON PEABODY<br>P O BOX 9<br>167 PARK ROW<br>BRUNSWICK ME  04011-0009<br>BY: JUDY METCALF, ESQ. | VERRILL & DANA<br>P O BOX 586<br>ONE PORTLAND SQUARE<br>PORTLAND ME  04112-0586<br>BY: DANIEL L. ROSENTHAL, ESQ. |

| Date of Entry | |
|---|---|
| 5/25/05 | Appeal from District Court, District Three, Division of Southern Penobscot Bangor ME (Small Claims Docket No. SC-2004-203) The following papers were received and filed:<br><br>1. Statement of Claim (Small Claims)<br>2. Small Claims hearing Notice set 8/6/05<br>3. Defendant's Motion to Stay and for Sanctions<br>4. Plaintiff's Opposition to Defendant's Motion to Stay and for Sanctions<br>5. Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to St and for Sanctions<br>6. Order Re: Continuance to 9/10/04 and Stay (Russell, J.) 6/1/04<br>7. Plaintiff's Reply to Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Stay and for Sanctions with Affidavit of John Darling<br>8. Order of Continuance (Gunther, J.) 7/16/04<br>9. Notice of Small Claims Hearing set 11/19/04<br>10. Defendant's Letter re: hearing dates<br>11. Plaintiff's Notice of Appearance<br>12. Plaintiff's Letter re: hearing dates<br>13. Letter dated 8/4/04 re: 11/19/04 hearing from Judge Gunther<br>14. Notice of Small Claims Hearing set 1/21/05<br>15. Decision and Judgment (Murray, R., J.) 3/29/05<br>16. Transcript Order<br>17. Defendant's Notice of Appeal<br>18. Defendant's Notice of Appeal (with note re: original filing)<br>19. Plaintiff's Notice of Appeal<br>20. Plaintiff's Notice of Appeal (with note re: original filing)<br>21. Plaintiff's Closing Argument received in the District Court on 2/25/05<br>22. Certified Copy of District Court Docket Entries<br>23. Seven (7) Pieces of Correspondence |
| 6/1/05 | Notice of Assigned Justice filed. Pursuant to Administrative Order, Single Justice Assignment of Civil Cases, Docket No. SJC-323, the above referenced case is specially assigned to Justice Jeffrey L. Hjelm. /s/ Margaret Gardner, Clerk Copy forwarded to attorneys of record. |